UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA          :
                                  :
          v.                      :   No. 3:02CR258 (EBB)
                                  :
NOEL DAVILA                       :
                                  :


**RULING ON DEFENDANT'S MOTION FOR A NEW TRIAL**

On September 11, 2002, a federal grand jury returned a two-count Indictment against Defendant Noel Davila ("Davila"), charging the Defendant with threatening the use of a weapon of mass destruction in violation of 18 U.S.C. § 2332a, and delivery of a threat through the United States Mail in violation of 18 U.S.C. § 876.  On June 28, 2004, the jury found Davila guilty on both of the counts alleged in the Indictment.  On July 2, 2004 Davila filed a motion for extension of time to move for a new trial pursuant to FED. R. CRIM. P. 33.  Defendant filed his Motion for a New Trial and memorandum in support on July 9, 2004 [Doc. No. 87 and Doc. No. 88].  For the reasons stated below, Davila's Motion for a New Trial [Doc. No. 87] is DENIED.

I. BACKGROUND

This Court previously set forth the relevant facts in its Ruling on Defendant's Motions for Judgment of Acquittal ("Ruling on Defendant's Rule 29 Motion") [Doc. No. 131], and here sets forth only those facts deemed necessary to an understanding of

the issues raised in, and decision rendered on, Davila's Motion
for a New Trial.

A. The Indictment

The Indictment charged Davila with sending a letter
containing a white powdery substance that was represented to be
anthrax along with threatening writing to the Connecticut State's
Attorney's Office in the Fairfield County Courthouse in
Bridgeport.

Count One charged Davila with knowingly and intentionally,
and without lawful authority, threatening the use of a weapon of
mass destruction, namely a biological agent, toxin or vector,
against persons within the United States, namely members and
employees of the Connecticut State's Attorney's Office in
Bridgeport, which threat affected interstate commerce and which
threatened use would have affected interstate commerce, all in
violation of 18 U.S.C. § 2332a.

Count Two charged Davila with willfully and knowingly
causing an envelope containing a white powdery substance
represented to be anthrax, and a letter, which together
threatened to injure the person of another, to be delivered by
the U.S. Postal Service to the Connecticut State's Attorney's
Office in Bridgeport, all in violation of 18 U.S.C. § 876.

B. The Government's Case-in-Chief

The Government's prosecution of Davila was based on an envelope mailed from the Cheshire Correctional Institution, addressed to the Connecticut State's Attorney's Office in Bridgeport, containing a white powdery substance; a piece of paper with "foreign handwriting" and prayers written on it; and another piece of paper bearing the words "ANTRAX A.K.A. Bin Laden."

At trial, the Government presented testimony from eighteen witnesses, as well as extensive documentary evidence, including tape-recorded conversations between the Defendant and a cooperating witness.

The witnesses and documentary evidence established Davila's role in mailing the envelope to the Bridgeport State's Attorney's Office on August 18, 2002. The evidence produced showed that Davila had had prior matters with that office in 1992, 2000 and 2001, and in 2001 he had filed a grievance and federal lawsuit against Stephen Sedensky, the state prosecutor from that office who handled the prior matters. Both the grievance and lawsuit were dismissed as without merit. Thereafter, while incarcerated at the Cheshire Correctional Institution, Davila sent an envelope containing a white powdery substance; a piece of paper with "foreign handwriting" and prayers in English written on it; and

3

another piece of paper, folded in half with the sides folded in to make a pouch, with the words "ANTRAX A.K.A. Bin Laden" written on it, to the Bridgeport State's Attorney's Office, where it was received on August 20, 2002.  The evidence established that Davila obtained the envelope he mailed from another inmate, and gave the envelope to yet another inmate to drop in the mailbox. Defendant wrote a different inmate's name in the return address portion of the envelope.  The evidence further established that none of these inmates had ever had any matters before the Bridgeport State's Attorney's Office, nor had the cooperating witness, Defendant's cellmate.  The evidence presented also established the elaborate steps Davila took to avoid leaving DNA or fingerprint evidence on the envelope or its contents.

The evidence at trial showed that the mailing resulted in a full HazMat response from the Connecticut State Police Emergency Services Unit and the FBI, and caused the front office area of the State's Attorneys' Office to be closed for approximately two and a half days while toxicology test results on the powder were conducted by the Connecticut Department of Public Health's BioResponse Laboratory.  The powdery substance tested negative for anthrax.

The evidence showed that the three administrative assistants who were in the immediate vicinity of the envelope when it was

opened were concerned after the incident, and each took particular prophylactic steps to minimize the results of their exposure.

Evidence further established the effect the mailing would have had on interstate commerce had the threatening mailing actually tested positive for anthrax. Testimony was based upon an actual anthrax contamination in the fall of 2001 in the same Connecticut postal facility that processed Davila's letter.

After Defendant's conviction, he moved for a judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. This Court considered Defendant's Motion for Judgment of Acquittal and his Supplemental Motion for Judgment of Acquittal, and on March 23, 2005, issued a written ruling denying Defendant's motions [Doc. No. 131]. Defendant now raises many of the same claims set out in his Rule 29 motion, challenging the sufficiency of the evidence presented to establish that his threatened use of a weapon of mass destruction would have affected interstate commerce, and arguing that the Court erred in its instructions to the jury on the interstate commerce element, and as to what constitutes "a threat to use a weapon of mass destruction" and a "true threat." In addition, Defendant also asserts that this Court's evidentiary ruling regarding

Government's Exhibit 14 and the testimony of Stephen Sedensky resulted in manifest injustice, therefore requiring a new trial.[1]

## II. STANDARD OF REVIEW

Upon a defendant's motion, a "court may vacate any judgment and grant a new trial if the interest of justice so requires" pursuant to Rule 33 of the Federal Rules of Criminal Procedure. FED. R. CRIM. P. 33(a). A district court has broad discretion to "set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992). The Second Circuit has set forth the standard for courts to follow in deciding a Rule 33 motion:

> The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice. The trial court must be satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict. The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation. There must be a real concern that an innocent person may have been convicted. Generally,

---

[1] The arguments in Defendant's Motion for a New Trial [Doc. No. 87] differ substantially from the arguments briefed in his Memorandum in Support of Motion for a New Trial [Doc. No. 88]. Defendant's Motion for a New Trial argues that the Court should have instructed the jury that the Government was required to prove the mailing actually had an effect on interstate commerce. However, this issue is not briefed in the Memorandum in Support of Motion for a New Trial and will not be addressed here. Defendant made and briefed that same argument in his Supplemental Motion for Judgment of Acquittal and it has been addressed in this Court's previous ruling on the motions for judgment of acquittal. Furthermore, although Defendant's Motion for a New Trial argues 1) that this Court erred in allowing the Government to elicit evidence from Stephen Sedensky that he had previously cross-examined Davila in a prior proceeding and that the Defendant had filed a lawsuit and grievance against him, and 2) that this Court erred in permitting a copy of an envelope sent by the Defendant to Sedensky to be admitted into evidence, Defendant's Memorandum in Support only addresses the Court's evidentiary ruling regarding Government's Exhibit 14.

> the trial court has broader discretion to grant a new
> trial under Rule 33 than to grant a motion for
> acquittal under Rule 29, but it nonetheless must
> exercise the Rule 33 authority sparingly and in the
> most extraordinary circumstances.

United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001)

(internal citations and quotations omitted).

III. DISCUSSION

A. Improper Jury Instructions

In support of his Motion for a New Trial, Defendant argues

that this Court improperly instructed the jury with regard to the

proof required to establish that the August 18, 2002 letter would

have had an effect on interstate commerce had the threat been

carried out, and the proof required to establish that Defendant

threatened to use a weapon of mass destruction and that the

mailing at issue was not a true threat.  Defendant took exception

to these portions of the charge at trial.[2]

A jury instruction is in error "if it misleads the jury as

to the correct legal standard or does not adequately inform the

jury on the law." United States v. Wilkerson, 361 F.3d 717, 732

(2d Cir. 2004) (quoting United States v. Walsh, 194 F.3d 37, 52

(2d Cir. 1999) (internal quotations omitted)).  "Moreover, a

defendant who requests an instruction bears the burden of showing

that the requested instruction accurately represented the law in

---

[2] See Jury Trial Excerpt, June 28, 2004, United States v. Davila,
3:02CR258(EBB) at 10-14.

every respect and that, viewing as a whole the charge actually given, he was prejudiced." Id. (citation and internal quotation marks omitted). If it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error," such error is deemed harmless. United States v. Pimentel, 346 F.3d 285, 302 (2d Cir. 2003) (citation omitted). "In making this assessment, [the Second Circuit] consider[s] '(a) whether there was sufficient evidence to permit a jury to find in favor of the defendant on the omitted element, and, if there was, (b) whether the jury would nonetheless have returned the same verdict of guilty.'" Id. (quoting United States v. Jackson, 196 F.3d 383, 386 (2d Cir. 1999)).

1. Jury Charge on the Interstate Commerce Element

Defendant argues that this Court should grant him a new trial because the Court refused to instruct the jury that the Government was required to prove that the Defendant's threat, if carried out, would have had a direct and/or substantial effect on interstate commerce. Defendant raises the same arguments regarding the standard of proof for the interstate commerce element that he made in his Motion for Judgment of Acquittal, and for the same reasons this Court dispensed with those arguments in the Ruling on Defendant's Rule 29 Motion, they are unavailing here.

At trial, Defendant requested that the jury be instructed that the Government was required to prove that a direct effect on interstate commerce was probable. This is not the law of the Second Circuit. In this Circuit, statutes with an explicit interstate commerce jurisdictional element only require a showing that the alleged conduct had a de minimus effect on interstate commerce. See United States v. Fabian, 312 F.3d 550, 554-55 (2d Cir. 2002). In Fabian, the Second Circuit held that neither United States v. Morrison, 529 U.S. 598 (2000), nor United States v. Lopez, 514 U.S. 549 (1995), affected the Second Circuit's requirement that the Government need only show a minimal effect on interstate commerce to support jurisdiction under statutes, such as the Hobbs Act, which require a particularized jurisdictional showing. Moreover, "a potential or subtle effect on commerce will suffice" to meet this minimal nexus requirement. Fabian, 312 F.3d at 554-55. And, in another post-Morrison decision, United States v. Santiago, the Second Circuit held that the jurisdictional element in the felon-in-possession statute, 18 U.S.C. §922(g), provides a "legitimate nexus with interstate commerce," and therefore the effect on interstate commerce need not be direct or substantial. 238 F.3d 213, 214 (2d Cir. 2001). See Ruling on Defendant's Rule 29 Motion, Section C.

The jury instructions on the interstate commerce element

9

given in this case stated the law accurately, tracking Second Circuit precedent and the statutory language.[3]  The charge to the jury also included standard instructions in accordance with Judge Leonard B. Sand et al., Modern Federal Jury Instructions, a source commonly used within the Second Circuit.  See, e.g. United States v. Yousef, 327 F.3d 56, 131 (2d Cir. 2003); United States v. Svoboda, 347 F.3d 471, 476 (2d Cir. 2003).

The Second Circuit does not require the Government to prove, in the case of a threat, a direct or substantial effect on interstate commerce.  Defendant asserts that the legislative

---

[3] The jury instructions in this case regarding the interstate commerce element read as follows:
THIRD ELEMENT – "AFFECTED INTERSTATE COMMERCE"
    The third element that the government must establish beyond a reasonable doubt is that, had the defendant used a weapon of mass destruction as threatened, the results of such use would have affected interstate commerce.
    The phrase "affected interstate commerce" means any action which, in any manner or to any degree, interferes with, changes, or alters the movement or transportation or flow of goods, merchandise, money, or other property in interstate commerce.  To establish this jurisdictional element, the government need only show a minimal effect on interstate commerce, although as with each and every element, it must establish this minimal effect beyond a reasonable doubt.
    In the case of a threat, the law permits the government to prove, beyond a reasonable doubt, that interstate commerce would have been affected had the alleged threat been carried out.  In other words, if the government proves beyond a reasonable doubt that, had the defendant's threat been carried out, that the use of the threatened weapon of mass destruction would have interfered with, changed, or altered, to any manner or to any degree, the movement or transportation or flow of goods, merchandise, money, or other property between the State of Connecticut and another state, then you may find that the defendant "affected interstate commerce" as that term is used in these instructions.
    It is not necessary for the government to prove that the defendant actually intended to affect commerce.  The government must prove beyond a reasonable doubt, however, that the defendant deliberately performed an act, the ordinary and natural consequences of which would be to affect interstate commerce, and that interstate commerce would have been affected if the defendant used a weapon of mass destruction as threatened.
. . .
Jury Instructions, United States v. Davila, 3:02CR258(EBB).

history of 18 U.S.C. § 2332a illustrates that Congress found that the use or threatened use of a weapon of mass destruction "seriously affects interstate and foreign commerce." Defendant's Memorandum in Support of Motion for a New Trial at 4 ("Defendant's Mem."). Congressional findings that the threat to use a weapon of mass destruction can have a substantial impact on interstate commerce do not change the legal standard of proof. Therefore, the Defendant has not met his burden of "showing that the requested instruction accurately represented the law in every respect," and Defendant's motion is DENIED on this ground. Wilkerson, 361 F.3d at 732.

2. Jury Charge on "Threatened to Use a Weapon of Mass Destruction" and "True Threat"

Defendant also argues that this Court should grant him a new trial because the jury was improperly instructed with regard to what constitutes a threat to use a weapon of mass destruction and what constitutes a true threat. Defendant alleges that the jury charge here did not define the term "threat" for the jury, but merely explained how the jury should consider the effect the threat had on the recipient, expanding the scope of the charge to include statements which were "merely alarming." Defendant's Mem. at 6. Defendant further alleges that that the threat to use a weapon of mass destruction "must communicate the idea that the

writer will engage in some future conduct." Defendant's Mem. at 5-6.

The Court's instructions here stated the law accurately, defining a threat as follows:

> A threat is a serious statement expressing an intention to inflict injury at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner. A statement is a threat if it was made under such circumstances that a reasonable person hearing or reading the statement would understand it as a serious expression of intent to inflict injury.[4]

Jury Instructions, <u>United States v. Davila</u>, 3:02CR258(EBB). The instructions tracked the language in Second Circuit precedent,

---

[4] The Court's instruction on the threat element in Count One were as follows:
FIRST ELEMENT - THREAT
    The first element that the government must establish beyond a reasonable doubt is that the defendant threatened to use a weapon of mass destruction against any person within the United States. Whether a given writing constitutes a true threat is an issue of fact for you, the jury, to decide.
    A threat is a serious statement expressing an intention to inflict injury at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner. A statement is a threat if it was made under such circumstances that a reasonable person hearing or reading the statement would understand it as a serious expression of intent to inflict injury. The test is an objective one - namely, whether an ordinary, reasonable recipient who is familiar with the context of the threat would interpret it as a threat of injury.
    To determine whether or not the defendant made a threat, you should consider the circumstances under which the statement was made, including its context with respect to surrounding circumstances, the language the defendant used, the reaction of those who heard or read the statement, and the effect of the alleged threat upon the recipient. An absence of explicitly threatening language does not preclude the finding of a threat. You should consider whether, on its face and in the circumstances in which it was made, defendant's statements were so unequivocal, unconditional and specific as to convey to the recipient a gravity of purpose and apparent prospect of execution.
    The essence of the offense is the threatened use of the weapon of mass destruction. It is not necessary to prove that the defendant had the ability to carry out the threat or intended to carry out the threat, but only that he intended to communicate a threat of injury.
Jury Instructions, <u>United States v. Davila</u>, 3:02CR258(EBB).

including <u>United States v. Sovie</u>, 122 F. 3d 122 (2d Cir. 1997);

<u>United States v. Malik</u>, 16 F.3d 45 (2d Cir.), *cert. denied*, 513

U.S. 968 (1994); and <u>United States v. Kelner</u>, 534 F.2d 1020 (2d

Cir. 1976).    Furthermore, the jury instructions tracked the

language of section 2332a, and included standard instructions

from Hon. Leonard B. Sand et al., Modern Federal Jury

Instructions.    <u>See</u> Hon. Leonard B. Sand et al., Modern Federal

Jury Instructions, Inst. 31-13 (2002).    And, finally, the Court

defined "use" consistent with <u>Bailey v. United States</u>, 516 U.S.

137, 145 (1995).[5]

Defendant's argument here is the same one he put forth in

his Motion for Judgment of Acquittal: that the threat to use a

weapon of mass destruction "must communicate the idea that the

writer will engage in some future conduct." Defendant's Mem. at

5-6.    As this Court discussed at length in the Ruling on

Defendant's Rule 29 Motion, 18 U.S.C. § 2332a does not require

that a threat be one of prospective action.    Congressional

concern following the events in Oklahoma City in 1994 centered

upon the need to prevent and criminalize any and all threats to

use a weapon of mass destruction.  <u>See</u> Ruling on Defendant's Rule

---

[5] The jury instructions in this case regarding "use" under Count One read as
follows:
FIRST ELEMENT - USE
    The government must prove beyond a reasonable doubt that the defendant
threatened to use a weapon of mass destruction against any person within the
United States.  To "use" means "to convert to one's service," "to employ," "to
avail oneself of," and "to carry out a purpose or action by means of. . . ."
Jury Instructions, <u>United States v. Davila</u>, 3:02CR258(EBB).

29 Motion, Section A.  As the Third Circuit held in <u>United States</u> <u>v. Zavrel</u>, "[a] threat is a serious statement or communication which expresses an intention to inflict injury *at once or in the future* as distinguished from idle or careless talk, exaggeration or something said in a joking manner."  384 F.3d 130, 136 (3d Cir. 2004) (emphasis added).  This language is substantially similar to the language defining a threat in Sand et al, and in <u>Malik</u> and <u>Sovie</u>, and is substantially the same as the definition of "threat" in this Court's instructions to the jury.  The law does not require that the threat be one of future conduct. Because Defendant's requested charge was not an accurate representation of the law in every respect, his motion is denied as to this ground.  <u>Wilkerson</u>, 361 F.3d at 732.

Defendant has not shown that the jury instructions to which he objects "[misled] the jury as to the correct legal standard or do[] not adequately inform the jury on the law." <u>Wilkerson</u>, 361 F.3d at 732.  Therefore, Defendant's challenges to the jury instructions fail, and his motion on these grounds is DENIED.

14

B. Evidentiary Ruling on the Issue of Motive[6]

In further support of his Motion for a New Trial, Defendant claims that this Court admitted highly prejudicial evidence on the issue of motive, which was not probative of any material issue in this case, including motive. Defendant argues that Government's Exhibit 14, an envelope addressed to Stephen J. Sedensky, mailed from Noel Davila at the Cheshire Correctional Facility, demonstrated only that Defendant knew the location of the courthouse. Defendant asserts that even assuming marginal relevance on the issue of motive under Federal Rule of Evidence 404(b), because Government's Exhibit 14 resembled the envelope at issue in this case, it was unfairly prejudicial under Federal Rule of Evidence 403 and should have been excluded.

Relevant evidence is "any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Rule 404(b) allows the admission of evidence of other acts to show, *inter alia*, proof of motive, opportunity, intent, preparation, plan, or knowledge, as long as upon the request of the accused, the

---

[6] In his Motion for a New Trial defendant also argues that this Court erred in allowing the Government to elicit evidence from Stephen Sedensky that he had previously cross-examined Davila in a prior proceeding and that the Defendant had filed a lawsuit and grievance against him. Defendant has not briefed this part of his argument, and it will only be addressed to the extent it is encompassed in Defendant's argument that this Court erred in permitting Government's Exhibit 14 to be offered into evidence.

Government provides reasonable notice of the general nature of any such evidence it plans to introduce at trial. FED. R. EVID. 404(b). Once evidence is offered for one of these purposes, the trial court must determine whether the danger of undue prejudice outweighs the probative value of the evidence. See FED. R. EVID. 404, Advisory Committee Notes, 1972 Proposed Rules, Note to Subdivision (b); FED. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice."). In evaluating the prejudicial effect, "[c]onsideration should be given to the probable effectiveness or lack of effectiveness of a limiting instruction." FED. R. EVID. 403, Advisory Committee Notes, 1972 Proposed Rules.

The Second Circuit has adopted an inclusionary approach in evaluating other acts evidence under Rule 404(b). United States v. Edwards, 342 F.3d 168, 176 (2d Cir. 2003); United States v. Brennan, 798 F.2d 581, 589 (2d Cir. 1986). Evidence of prior wrongs, crimes, or acts is admissible for any purpose other than to attempt to demonstrate the defendant's propensity to commit the crime charged, Edwards, 342 F.3d at 176, as long as "(1) [the evidence] was offered for a proper purpose; (2) it was relevant to a material issue in dispute; (3) its probative value is substantially outweighed by its prejudicial effect; and (4) the

16

trial court gave an appropriate limiting instruction to the jury if so requested by the defendant." United States v. Zedner, 2005 U.S. App. LEXIS 3809, *, *35, 2005 WL 535067 (2d Cir. 2005) (quoting United States v. LaFlam, 369 F.3d 153, 156 (2d Cir. 2004)).

Defendant's main defense at trial was that he was not responsible for the threatening mailing, but that one or more of the other inmates at Cheshire Correctional Facility was behind the mailing. The Government notified Defendant in its discovery letter of September 8, 2003, that it intended to offer other acts evidence under Rule 404(b). The Government called Stephen Sedensky as a witness, the Assistant State's Attorney who had previously handled prosecutions of Defendant for the Bridgeport State's Attorney's Office, and Sedensky testified that he had handled matters regarding Defendant during prior proceedings. Sedensky testified that he vigorously cross-examined Davila during these prior proceedings, and thereafter, Defendant developed animosity toward Sedensky and filed a grievance and a lawsuit against him. Sedensky testified that, in Defendant's federal lawsuit, he accused Sedensky of having a malicious personal vendetta against him. Both the lawsuit and grievance were dismissed as without merit. The threatening mailing at issue here was sent after those matters were dismissed. Sedensky

testified that he had never handled matters against any of the other inmates at Cheshire Correctional Facility involved in the incident – Christopher Blacker, Anthony Young, Aristocles Barley and Halroyd Gordon.

The evidence elicited from Sedensky was highly probative with regard to motive, opportunity, identity, intent, and knowledge.  Defendant was the only inmate involved in the incident who had past matters with the Bridgeport State's Attorney's Office.  Furthermore, Defendant had previously sent mail to Sedensky at the Bridgeport address to which the mailing at issue here was sent.  To minimize any prejudice, the Government was allowed to lead Sedensky on direct examination, referring to Davila's prior criminal proceedings only as "proceedings" or "matters."

Government's Exhibit 14, a copy of an envelope Davila sent from the Cheshire Correctional Institution to Sedensky at the Bridgeport State's Attorney's Office, enclosing a copy of his federal lawsuit, was offered solely to establish Davila's knowledge regarding the address of the Office.  As the Government notes in its brief, the fact that the Defendant was incarcerated was put before the jury during jury selection, and therefore, his return address on Government's Exhibit 14 would not be prejudicial in that regard.

The evidence here was properly offered as background evidence to "complete the story of the crimes charged." Brennan, 798 F.2d at 589. As the Second Circuit has noted, "[t]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment." United States v. Birbal, 62 F.3d 456, 464 (2d Cir. 1995) (quoting United States v. Coonan, 938 F.2d 1553, 1561 (2d Cir. 1991)). The evidence here "furnish[ed] an explanation of the understanding or intent with which certain acts were performed," by shedding light on why Defendant would have sent the mailing to the Bridgeport State's Attorney's Office. Birbal, 62 F.3d at 464.

The evidence was also properly admitted as other act evidence under Rule 404(b) of the Federal Rules of Evidence. Evidence that Davila had prior dealings with the Bridgeport State's Attorney's Office, that he developed personal animosity toward Sedensky, that he knew the address of the State's Attorney's Office in Bridgeport, and that he was the only one of the four inmates from the Cheshire Correctional Facility involved in the mailing to have had prior dealings with that office, was properly admitted under Rule 404(b) to show motive, knowledge, opportunity, identity, preparation and planning on the part of Defendant. See, e.g. Yousef, 327 F.3d at 122 (holding that

19

because the salient feature of a letter was "the trumpeting of a motive," and Rule 404(b) expressly permits evidence on that issue, the permissible use of the letter outweighed any arguably impermissible use).

Under the Rule 403 balancing test, the probative value of Government's Exhibit 14 outweighs any possible prejudice that the jury would consider the evidence for an impermissible purpose, namely that because Defendant sent one envelope to Sedensky it would follow that he sent another. Instead, Government's Exhibit 14 and the Sedensky testimony properly illuminated the possible motive and intent behind the mailing at issue here. This Court "reduced any risk of unfair prejudice with a carefully worded limiting instruction" which cautioned the jury that the evidence of other uncharged acts was put forth solely with regard to motive or background, and that they must consider only the charges set forth in the Indictment.[7] Zedner, 2005 U.S. App.

---

[7] The Court's limiting instruction was as follows:
CONSIDER ONLY THE CHARGES
    The defendant is not charged with committing any crimes other than the offenses contained in the indictment. You have heard evidence of other conduct allegedly committed by the defendant, and other proceedings involving the defendant. I instruct you that such evidence, if believed, is to be considered by you solely for the limited purposes of explaining the background of the case; the background of relationships among the various persons discussed in the trial testimony; in considering whether the defendant acted with the requisite state of mind or intent as to the crimes charged; or with regard to motive, which, I remind you, is not an element of either of the crimes with which the defendant is charged, but is something that you may consider in your determination of the intent of the defendant.
    Again, any such evidence of other conduct allegedly committed by the defendant is to be considered by you only for these purposes and for whatever value, if any, you deem appropriate for these purposes. But I want to emphasize that you are not to consider evidence of other uncharged acts for

20

LEXIS at *36.

Because the evidence was highly probative of Defendant's motive, intent, and knowledge, and was not unfairly prejudicial to Defendant, and this Court gave an appropriate limiting instruction, Defendant's challenge to the Court's rulings on the admissibility of Government's Exhibit 14 fails, and his motion on this ground is DENIED.

<u>CONCLUSION</u>

This Court is "satisfied that competent, satisfactory and sufficient evidence in the record supports the jury verdict." <u>Ferguson</u>, 246 F.3d at 134. Because this court finds Defendant has failed to show that letting the jury verdict stand would be a miscarriage of justice, this Court declines to exercise its discretion under Federal Rule of Criminal Procedure 33 and order a new trial. Accordingly, Defendant's Motion for New Trial [Doc. No. 87] is DENIED.

SO ORDERED.

_____
ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut, this ___ day of March, 2005.

_____

any other purpose and you are only to return a verdict as to the charges contained in the indictment.
Jury Instructions, <u>United States v. Davila</u>, 3:02CR258(EBB).